Ronald Ball (12322)
Attorney for Plaintiffs
1594 N. Main St.
Farmington, UT 84025
Telephone: (801) 83700573
Facsimile: (801) 447-9424
ron@balllegal.com
Attorney for Plaintiff

**U.S. DISTRICT COURT**
**DISTRICT OF UTAH**
351 S. West Temple, Salt Lake City, Utah 84101

| | |
|---|---|
| HERNAN VALDEZ<br>Plaintiff,<br>v.<br><br>TYCO INTEGRATED SECURITY LLC,<br>DBA ADT SECURITY SYSTEMS, a Utah registered corporation, and JAN GIDDINGS, in her individual management capacity.<br>Defendants. | **COMPLAINT**<br><br>**(JURY DEMANDED)**<br><br>CIVIL NO: 2:16-cv-00016-PMW<br><br>JUDGE : Paul M. Warner |

COMES NOW the Plaintiff, Hernan Valdez, by and through counsel, Ronald Ball, for causes of action against the Defendants Tyco Integrated Security, LLC herafter referred to as (the "Employer"), and Jan Giddis (collectively "Defendants") as follows:

**I. NATURE OF THE CLAIMS**

1. This suit is brought by Plaintiff under Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981.

2. Plaintiff is a 56-year-old Hispanic-American male, whose skin is a darker shade olive. Plaintiff was employed by the Employer and while working as a licensed installer suffered color, race, and age discrimination. Specifically, Defendant's denied Mr. Valdez the same job opportunities afforded non-minority employees, job transfer while maintaining seniority, promotion, and reasonable accommodations or a light duty position or a move to a more appropriate position following an on duty debilitating injury. Such positions were provided to less qualified, younger, Caucasian employees. Additionally, Mr. Valdez was subject to regular demeaning jokes, nicknames, and job duties that were intended to demean, belittle, and draw attention to his race.

3. Plaintiff seeks promotion, economic damages, compensatory damages, liquidated damages, interest, and attorneys' fees and costs.

## II. PARTIES

4. Mr. Valdez resides in the State of Utah, Davis County, and was employed by the Tyco Integrated Security, LLC at all times relevant in this complaint.

5. Tyco Integrated Security, LLC is a Limited Liability Corporation registered in Salt Lake County, Utah.

6. Jan Giddings, is an individual holding primary management responsibility with the Employer.

## III. JURISDICTION AND VENUE

7. This Court has original jurisdiction under the provisions of Utah Code Ann. § 78A-5-102 with respect to Plaintiff's claims.

8. Venue is proper with this Court pursuant to Utah Code Ann. §§ 78B-3-302(3), 307(2) as the causes of action arose and the violations alleged herein occurred in Salt Lake County.

9. With regard to the claims arising under Title VII, Mr. Valdez has complied

with the administrative requirements set forth in 42 U.S.C. § 2000e-5. On or about August 8, 2013.

10. Mr. Valdez filed a Charge of Discrimination alleging discrimination on the basis of race, color and age with the Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge is attached hereto as Exhibit A.

11. On October 14, 2015, Mr. Valdez received a Notice of Right to Sue issued by the EEOC. A copy of that Notice is attached hereto as Exhibit B.

## IV. GENERAL ALLEGATIONS

12. Mr. Valdez is a Hispanic-American and has a darker shade of olive skin. He was born in 1959.

13. During the time of his employment with the Employer, Mr. Valdez was licensed by the State of Utah as a security system installer.

14. The discrimination began as early as 2001 when Mr. Valdez was transferred from the Utah office of the company to the Arizona office of the company. He was forced to resign from the company and then reapply with the same company in order to transfer.

15. The same issue arose in 2005 when he returned to Utah to work in the Utah office. Mr. Valdez was again forced to resign then reapply with the same company thus again loosing all seniority.

16. From 2001 to his termination in April 2013, due to seniority issues, Mr. Valdez was denied promotion, increased pay, and increased job responsibilities.

17. Upon returning to the Utah office of Employer, Defendant Giddings refused to issue Mr. Valdez a company installation vehicle.

18. Instead, Defendant Giddings instructed Mr. Valdez to drive his own vehicle.

19. Each time Mr. Valdez asked about a company install vehicle, Defendant Giddings said she would look into it.

18. Company install vehicles were available and not being utilized.

19. All Caucasian installer employees were provided with a company install vehicle.

20. Upon returning to the Utah office Mr. Valdez was denied the issuance of company tools.

21. All Caucasian installer employees were issued company tools.

22. Mr. Valdez was instead required to check out tools each time he needed a specific tool while all other Caucasian installer employees were permanently issued specialized tools.

23. On slow days, all unessential Caucasian installer employees would be sent home early with pay.

24. Mr. Valdez would not be allowed to go home early.

25. Mr. Valdez would be directed by Defendant Giddings to clean the parking lot, take out trash, or other menial manual labor duties.

26. No Caucasian installer employee was ever directed to perform menial, manual labor duties.

27. Mr. Valdez was subjected to constant ridicule and harassment by Defendant Giddings.

28. Defendant Giddings created an environment where employees understood that Mr. Valdez was to be treated as a lesser class citizen.

29. Mr. Valdez was the object of racial jokes by Defendant Giddings. Other employees joined in as they realized Mr. Valdez was fair game.

30. Defendant Giddings started the banter by calling Mr. Valdez "The Frito Bandito."

31. As time progressed, the term "The Frito Bandito" expanded and became the favorite term Defendant Giddings and other employees used when referring to menial labor or "crap" assignments. They were called a "Frito Bandito Thing."

32. On occasion, when jobs were scarce or in an effort to quickly complete an install to help employees get off early, Defendant Giddings would assign two (2) or even

4

three (3) installers to complete the install.

33. Defendant Giddings never followed the same procedure described in Paragraph 32 when it applied to Mr. Valdez. He was sent to complete tasks on his own.

34. Mr. Valdez was also called "Hay Beaner" by some employees.

35. Mr. Valdez was also referred to as "Oh it's Beaner" when he would call in or ask for something from management.

36. Mr. Valdez was also referred to a wetback by some employees. If there was a menial task it would be referred to as a "Wetback Thing."

37. Mr. Valdez was referred to as Mexican. When being directed to perform certain jobs, Mr. Valdez would be told "Mexican do that."

38. On one occasion Jan Giddings was heard to say "I hate Mexicans."

39. On many occasions Defendant Jan Giddings would say "Andale Andale" for no reason and would start laughing.

40. Defendant Giddings would also say "On Delay" (an alarm term) with a Spanish accent then laugh.

41. Dennis Williams another manager for the Employer would constantly berate Mr. Valdez calling him a "Mexican."

42. Many of the jokes and comments occurred in Defendant Jan Giddings office.

43. Defendant Giddings would laugh when she heard other employees call Mr. Valdez the indicated derogatory names.

44. Never did Defendant Giddings stop a derogatory, racially motivated, joke.

45. Defendant Giddings never corrected an employee when she heard an employee referring to Mr. Valdez in the above manner.

46. Defendant Giddings never stopped or corrected a racially motivated joke but would laugh with the employee making the joke at Mr. Valdez' expense.

47. Mr. Valdez was intentionally left from lists to take tests required for installers.

48. When it was brought to Defendant Giddings attention she said she would look into it. (Code for it will never happen.)

49. Defendant Giddings told Mr. Valdez it was Phil's responsibility to have his name included on the list.

50. Phil said it was Defendant Giddings responsibility to place Mr. Valdez's name on the list.

51. Defendant Giddings was making a game out of having Mr. Valdez run back and forth trying to get someone to place his name on the list.

52. It took union involvement for her to place Mr. Valdez on the list to take the required installer test.

53. In March of 2011, while installing security cameras at a meet processing plant, Mr. Valdes suffered an electrocution.

54. The electrocution caused serious physical restrictions on Mr. Valdez.

55. Mr. Valdez requested an accommodation to deal with the restrictions he was experiencing at the time.

56. Mr. Valdez was denied any accommodation and was terminated from his employment.

57. Mr. Valdez was treated differently than younger employees.

57. This discrimination based on age was apparent with how management allowed the younger employees to treat Mr. Valdez.

## FIRST CAUSE OF ACTION
**(Color and Racial Discrimination in Violation of Title VII against the Employer)**

58. Plaintiff realleges and incorporates by reference paragraphs 1 – 56 as set forth above.

59. The Employer subjected Mr. Valdez to constant racially charged nicknames, jokes, slurs, and job duties.

60. The Employer treated Mr. Valdez as a second-class citizen as opposed to how

Caucasian employees were treated.

61. The employer refused to allow Mr. Valdez to be transfer to a position that would accommodate his work related work restrictions. During the same time period employees that were Caucasian were allowed to make similar position transfers.

62. The Employer discriminated against Mr. Valdez on the basis of race and color and treated him differently than white employees.

63. As a result of the Employers unlawful conduct in violated of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, Mr. Valdez is entitled to injunctive relief; including re-employment, transfer and back pay; emotional distress damages; prejudgment interest; and attorneys' fees and costs expended in this action. Attorneys' fees and costs expended in this action.

**SECOND CAUSE OF ACTION**
**(Discrimination in Violation of the Age Discrimination in Employment Act against the Employer)**

64. Plaintiff realleges and incorporates by reference paragraphs 1 – 56 as set forth above.

65. The Employer's allowing less-qualified younger employees to continue working while denying similar opportunities to Mr. Valdez was due to Mr. Valdez's age.

66. The Employer's requirement of Mr. Valdez to resign then reapply when transferring from one office to another in the same company while not requiring younger employees to do the same directly related to Mr. Valdez's age.

67. As a result of the Employer's discriminatory conduct, Mr. Valdez is entitled to recover his lost wages and benefits and prejudgment interest on those amounts.

67. The actions of the Employer were taken with malice or reckless disregard for Mr. Valdez's federally protected rights, and as such, he is entitled to liquidated damages.

69. Mr. Valdez is also entitled to recover all attorneys' fees and costs expended in this action.

## THIRD CAUSE OF ACTION

**(Color and Racial Discrimination in Violation of Title VII against Defendant Jan Giddings)**

70. Plaintiff realleges and incorporates by reference paragraphs 1-56 as set forth above.

71. Defendant Giddings created a work environment that encouraged employees to treat Mr. Valdez in a lesser stature based on his race.

72. Defendant Giddings engaged in a pattern of blatant racial discrimination by her actions and words.

73. Defendant Giddings refused to allow Mr. Valdez to transfer into a permanent position that was appropriate for his work related physical restrictions, instead allowing a Caucasian employee with far less experience and lesser relevant credentials to transfer into positions that became available based on seniority.

74. As a result of Defendant Giddings decision not allow transfer, Mr. Valdez has suffered and will continue to suffer both economic and non-economic loss including but not limited to lost wages and benefits, future pecuniary losses, emotional distress, damage to his reputation, and other compensatory damages. Mr. Valdez is entitled to recover for those losses and to injunctive relief, prejudgment interest, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**(Hostile Work Environment in Violation of Title VII against Employer)**

75. Plaintiff realleges and incorporates by reference paragraphs 1-56 as set forth above.

76. Defendants encouraged an atmosphere of hostility toward Mr. Valdez.

77. As a result of Defendant Giddings decision not allow transfer, Mr. Valdez has suffered and will continue to suffer both economic and non-economic loss, including but

not limited to lost wages and benefits, future pecuniary losses, emotional distress, damage to his reputation, and other compensatory damages, Mr. Valdez is entitled to recover for those losses and to injunctive relief, prejudgment interest, and attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Pay Inequity in Violation of Title VII against Employer)

78. Plaintiff realleges and incorporates by reference paragraphs 1 -56 as set forth above.

79. By requiring Mr. Valdez to quit and reapply each time he was transferred from one company office to another, Mr. Valdez suffered a loss in pay based on years of service.

80. As a result of Defendant's decision not to allow transfer, Mr. Valdez has suffered and will continue to suffer both economic and non-economic loss including but not limited to lost wages and benefits, future pecuniary losses, emotional distress, damage to his reputation, and other compensatory damages. Mr. Valdez is entitled to recover for those losses and to injunctive relief, prejudgment interest, and attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Race Discrimination in Violation of 42 U.S.C. § 1981 against the Employer)

82. Plaintiff realleges and incorporates by reference paragraphs 1 -56 as set forth above.

83. Employer violated the employment contract created between the Employer and Mr. Valdez that expressly prohibited all manner of racial discrimination.

84. Employer violated the employment contract established between the Employer and the employees union expressly prohibiting racial discrimination in any

form.

85. Mr. Valdez's race was a motivating factor in Employer's decision not to promote Mr. Valdez.

86. Mr. Valdez's race was a motivating factor in Employer's decision to terminate Mr. Valdez.

87. Mr. Valdez's race was a motivating factor in Employer's decision to create a hostile work environment that encouraged racial disparity, racial denigration, and racial hostility between Mr. Valdez and his Caucasian co-workers.

88. Employers actions were unwelcome by Mr. Valdez. Mr. Valdez made numerous attempts with management to have the harassment cease.

89. Employers conduct was so severe and pervasive that any reasonable person would find the work environment to be hostile and abusive.

90. Conduct of Employer was continuous during the course of Mr. Valdez's employment.

91. As a result of Defendant's actions, Mr. Valdez has suffered and will continue to suffer both economic and non-economic loss including but not limited to lost wages and benefits, future pecuniary losses, emotional distress, damage to his reputation, and other compensatory damages. Mr. Valdez is entitled to recover for those losses and to injunctive relief, prejudgment interest, and attorneys' fees and costs.

**REQUEST FOR JURY TRIAL**

Plaintiff requests that this matter be tried before a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant,
I.   For Plaintiff's re-employment;
II.  For Plaintiff's lost wages, compensation, and benefits;

III. For general damages including emotional distress;

IV. For Plaintiff's reasonable attorneys' fees, including expert witness fees as provided by 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5;

V. For pre-judgment and post-judgment interest at the highest lawful rate;

VI. For injunctive relief; and

VII. For costs of court and such other relief as the court deems just and

DATED this 6th day of January 2016.

_/S/ Ronald Ball_
Ron Ball
*Attorney for Plaintiff*